UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NATURAL RESOURCES WORLDWIDE LLC | * | CIVIL ACTION |
| | * | |
| Plaintiffs, | * | |
| | * | NO. _____ |
| VERSUS | * | |
| | * | |
| THE UNITED STATES DEPARTMENT OF THE | * | JUDGE |
| INTERIOR; DEBRA HAALAND, in her official | * | |
| capacity as Secretary of the Interior; BUREAU OF | * | |
| OCEAN ENERGY MANAGEMENT; ELIZABETH | * | MAGISTRATE JUDGE |
| KLINE, in her official capacity as Director of the | * | |
| Bureau of Ocean Energy Management; BUREAU | * | |
| OF SAFETY AND ENVIRONMENTAL | * | |
| ENFORCEMENT; and PAUL HUANG, in his | * | |
| official capacity as Acting Director of the Bureau of | * | |
| Safety and Environmental Enforcement | * | |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## **COMPLAINT**

Plaintiff Natural Resources Worldwide LLC ("NRW"), under the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701-706, and the Outer Continental Shelf Lands Act (the "OCSLA"), 43 U.S.C. §§ 1331 *et seq.*, respectfully submits this Complaint alleging that Defendants have violated the APA and the OCSLA by unreasonably delaying action on Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way pertaining to various leases on the Outer Continental Shelf that have been fully submitted for several months but have not been acted upon

by Defendants. This Court should compel Defendants to timely process and act on the assignments and forms at issue.

## Parties

1.

Plaintiff NRW is an independent oil and gas production company operating on the Outer Continental Shelf in the Gulf of Mexico. In 2024, NRW acquired interests in a number of Outer Continental Shelf oil and gas leases in a bankruptcy sale. After the acquisition, NRW filed with Defendants the various Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way at issue here in order to perfect the transfer of assets and operations from the bankrupt entities to NRW, as discussed in more detail below.

2.

Defendant Debra Haaland is sued in her official capacity as the Secretary of the United States Department of the Interior. Under the OCSLA, Secretary Haaland is the federal official ultimately responsible for the management and oversight of leasing, exploration, and production of oil and gas on the Outer Continental Shelf and for all actions or inactions of the Department of the Interior, the Bureau of Ocean Energy Management, and the Bureau of Safety and Environmental Enforcement.

3.

Defendant United States Department of the Interior is a department of the United States government with supervisory and management responsibility over the Bureau of Ocean Energy Management and the Bureau of Safety and Environmental Enforcement, which under the OCSLA are responsible for implementing and applying the federal laws, regulations, and policies at issue here.

4.

Defendant Bureau of Ocean Energy Management ("BOEM") is a bureau within the United States Department of the Interior.  Under the OCSLA and authority delegated to it by the Secretary of the Department of the Interior, BOEM is responsible for managing the development of United States Outer Continental Shelf energy, mineral, and geological resources.  BOEM is the bureau responsible for reviewing and approving the Assignments of Record Title, Assignments of Operating Rights Interest, and Designation of Operator forms at issue in this lawsuit.

5.

Defendant Elizabeth Kline is sued in her official capacity as the Director of BOEM. Under the authority delegated by the Secretary of the Department of the Interior, Ms. Kline is the official responsible for the management of BOEM.

6.

Defendant Bureau of Safety and Environmental Enforcement ("BSEE") is a bureau within the United States Department of the Interior.  Under the OCSLA and authority delegated to it by the Secretary of the Department of the Interior, BSEE is the lead bureau charged with regulating safety and environmental protection with respect to the energy industry on the Outer Continental Shelf.  BSEE is the bureau responsible for reviewing and approving the Assignment of Pipeline Right of Way at issue in this lawsuit.

7.

Defendant Paul Huang is sued in his official capacity as Acting Director of BSEE. Under the OCSLA and authority delegated by the Secretary of the Department of the Interior, Mr. Huang is the official responsible of the management of BSEE.

**Jurisdiction and Venue**

8.

This Court has federal question subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1331 because NRW is asserting a claim for judicial review under the Administrative Procedure Act, 5 U.S.C. § 702. This Court also has federal question jurisdiction under the OCSLA, 43 U.S.C. § 1349(b)(1), because this case arises out of operations conducted on the Outer Continental Shelf that involve exploration, development, and production of minerals of the Outer Continental Shelf and rights to such minerals. Jurisdiction also exists under 28 U.S.C. § 1361 because this is an action in the nature of a mandamus to compel an officer, employee or agency of the United States to perform a duty owed to NRW.

9.

Venue is proper in this district under 28 U.S.C. § 1391(e) and 43 U.S.C. § 1349(b)(1) because one or more of the Defendants resides or can be found in this district. In particular, both BOEM and BSEE have their Gulf of Mexico regional offices within this district.

**Background**

10.

In February 2024, NRW purchased interests in several producing Outer Continental Shelf oil and gas leases and related assets, including pipeline rights of way, out of the bankruptcy of MLCJR LLC and various of its affiliates (Case No. 23-90324, S.D. Tex. Bnkr.).

11.

During the proceedings to obtain bankruptcy court approval of NRW's purchases, the federal government, through the Department of the Interior, demanded that NRW agree to an installment plan to pay off royalty obligations owed by the bankrupt entities with respect to the oil and gas leases that were the subject of the purchase. NRW was willing to do this, provided

4

agreement on the actual amounts owed by the bankrupt entities and commercially reasonable payment terms could be reached. The bankruptcy court required that NRW and the Office of Natural Resources Revenue ("ONRR"), which is the Department of the Interior bureau responsible for collecting royalties owed for development of minerals on the Outer Continental Shelf and federal lands, enter into an agreement outlining the terms on which NRW would pay the bankrupt entities' royalty obligations as a condition of approving the sale. The Purchase and Sale Agreement approved by the bankruptcy court contains a provision contemplating that NRW and ONRR would enter into a settlement agreement in form and substance acceptable to NRW at NRW's sole discretion.

12.

In order to perfect its purchase of assets from the bankrupt entities, NRW needed to obtain assignments of the relevant leases, operating rights, and pipeline rights of way from the bankrupt entities to NRW and designate new operators to act on NRW's rights as lessee or operating rights owner of the purchased assets.

13.

The regulations implementing the OCSLA require that BOEM must approve, *inter alia*, Assignments of Record Title to Outer Continental Shelf leases, Assignments of Operating Rights Interest in Outer Continental Shelf leases, and Designations of Operators for Outer Continental Shelf leases. The regulations implementing the OCSLA further provide that BSEE must approve Assignments of Pipeline Rights of Way on the Outer Continental Shelf.

14.

After closing the purchase of the assets from the bankruptcy, NRW began preparing the forms, exhibits, supporting information, and payments necessary to obtain BOEM approval of the Assignments of Record Title to Outer Continental Shelf leases, Assignments of Operating

Rights Interest in Outer Continental Shelf leases, and designations of operators needed to perfect its purchases, as well as BSEE approval of the Assignments of Pipeline Rights of Way needed to perfect its purchases.  Notably, BOEM and BSEE required that NRW include with its submissions seeking approval of Assignments of Record Title, Assignments of Operating Rights Interest, and Assignments of Pipeline Rights of Way documentation of financial assurance (i.e., bonds to secure future decommissioning obligations with respect to the asset) at the levels required by regulations that took effect in June 2024 even though the purchases occurred before June 2024, applicable regulations indicate that BOEM has discretion to approve assignments even if financial assurance is absent, *see* 30 C.F.R. §§ 556.704, 556.802, and other regulations provide for phased in compliance with the levels of financial assurance required as of June 2024, *see* 30 C.F.R. § 556.901(h).

15.

By June 12, 2024, NRW had submitted to BOEM all of the forms, exhibits, supporting information, and payments required to obtain BOEM approval of the Assignments of Record Title to Outer Continental Shelf leases, Assignments of Operating Rights Interest in Outer Continental Shelf leases, and designations of operators shown on the attached Exhibit 1.  The submissions identified on the attached Exhibit 1-A also included documentation of financial assurance at the levels demanded by BOEM despite the fact that such financial assurance is not mandatory under the current regulations.

16.

By October 23, 2024, NRW had also submitted to BSEE all of the forms, exhibits, supporting information, and payments required to obtain BSEE approval of the assignment of Pipeline Right of Way OCS-G 15003 SEG 9050, which NRW had acquired in the bankruptcy sale and that NRW needed to transport production associated with certain leases and operating rights

interests it had acquired in the bankruptcy sale. The submission with respect to Pipeline Right of Way OCS-G 15003 SEG 9050 includes documentation of financial assurance at the level demanded by BSEE.

17.

Despite the fact that NRW has made complete submissions, neither BOEM nor BSEE has approved NRW's Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, or the Assignment of Pipeline Right of Way, or taken any other action whatsoever in response to NRW's completed submissions.

18.

During the months after NRW completed its submissions, NRW representatives contacted BOEM and BSEE on numerous occasions to confirm that nothing additional was needed to complete the submissions, request updates on the status of approval decisions, and emphasize that NRW needed approvals or at least a timeline for approvals so that NRW could plan for important commercial considerations. BOEM and BSEE representatives generally responded by confirming that nothing further was needed from NRW and stating that no timeline could be given for decision.

19.

NRW's interactions with BSEE representatives regarding the assignment of Pipeline Right of Way OCS-G 15003 SEG 9050 from bankrupt entity EPL Oil & Gas, LLC ("EPL") to NRW typify Defendants' failure to act on NRW's submissions. Obtaining approval of that assignment is particularly crucial to NRW's commercial interests because NRW needs Pipeline Right of Way OCS-G 15003 SEG 9050 to transport production from a lease that NRW is attempting to put back into production after its bankruptcy acquisitions, and the delay in obtaining approval is causing NRW significant and ongoing damages.

20.

By no later than October 23, 2024, NRW had submitted to BSEE all of the forms, exhibits, and payments required to obtain approval for the assignment of Pipeline Right of Way OCS-G 15003 SEG 9050 from EPL to NRW, including documentation of financial assurance.

21.

On October 25, 2024, NRW Land Manager Sheila Watson contacted a BSEE representative by telephone to inquire about the status of the assignment of Pipeline Right of Way OCS-G 15003 SEG 9050. A BSEE supervisor responded by email later the same morning and stated: "BSEE will need additional time to review the assignment of Pipeline ROW grant OCS-G15003. We will update you as appropriate."

22.

On October 29, 2024, Ms. Watson again contacted BSEE representatives, this time by email, to request an update on the assignment of Pipeline Right of Way OCS-G 15003 SEG 9050 and to inquire as to whether BSEE needed any additional information to process the assignment. The same BSEE supervisor responded: "Nothing more is required and there is no additional update to provide."

23.

Later on October 29, 2024, NRW CEO Vincent DeVito requested that BSEE provide a "timeline" for approval of the assignment of Pipeline Right of Way OCS-G 15003 SEG 9050. A BSEE Regional Supervisor responded the same day that: "A timeline cannot be provided at this time. We are working to provide you a response. We will definitely let you know once the assignment has been completed." Mr. DeVito replied and expressly made the BSEE representatives aware that NRW needed approval of the assignment because "there are a few commercial considerations for which we need to plan."

8

24.

On November 4, 2024, Mr. DeVito again emailed the BSEE representatives to request an update on the assignment of Pipeline Right of Way OCS-G 15003 SEG 9050. Mr. DeVito noted that NRW representatives could be available for a conference with BSEE if needed. The BSEE Regional Supervisor again responded to state that: "No additional information is needed from NRW currently. We will let you know once the assignment has been completed."

25.

Mr. DeVito emailed the BSEE representatives again on November 15, 2024 to check the status of the assignment of Pipeline Right of Way OCS-G 15003 SEG 9050, stating: "I am checking on this item as it carries a financial component for our portfolio that we would like to get back to work after our investments." The BSEE Regional Supervisor responded on November 18, 2024 that: "There are no additional questions at this point."

26.

On November 25, 2024, Mr. DeVito emailed the BSEE Regional Supervisor to inquire "whether there is another agency I should be communicating with about this ROW." The BSEE Regional Supervisor responded the next day to state: "There is no other agency that you should be communicating to with regards to this ROW application."

27.

Mr. DeVito next emailed the BSEE Regional Supervisor about assignment of Pipeline Right of Way OCS-G 15003 SEG 9050 on December 5, 2024. Mr. DeVito wrote: "NRW believes a reasonable time has passed for agency action on the ROW. Can you kindly advise as to the timeline so that we can attempt to mitigate the ongoing commercial impact?" The BSEE Regional Supervisor replied on December 6, 2024 and said only that: "BSEE is still reviewing the assignment of Pipeline ROW grant OCS-G 15003 and we will update you as appropriate."

9

28.

Meanwhile, NRW continued to negotiate with the Department of the Interior, ONRR, to attempt to come to an agreement on payment of the bankrupt entities' royalty obligations with respect to the assets NRW acquired in the bankruptcy sale.  Despite NRW's best good faith efforts and the parties appearing to be near an agreement on multiple occasions, NRW was unable to reach an agreement with the Department of the Interior, ONRR on payment of the bankrupt entities' royalty obligations.  This is due in part to opposing positions as to how certain portions of the royalty obligations were to be handled under the terms of the bankruptcy sale agreement and also in large part because the amounts of royalties ONRR asserts as being due from the bankrupt entities are vastly different than the amounts that would be due based on the information on the books of the bankrupt entities such that it appears that the Department of the Interior, ONRR is seeking to require NRW to pay royalties for non-acquired assets and/or pay other fees that NRW did not agree to pay in connection with the bankruptcy sale, among other issues.  Attorneys from the United States Department of Justice are involved in the negotiations with NRW regarding payment of the bankrupt entities' royalty obligations.  NRW representatives have attempted to obtain additional detailed information from the Department of Justice attorneys and/or the Department of the Interior, ONRR to reconcile the government's calculations of the royalties allegedly due from the bankrupt entities with respect to the acquired assets, but to no avail.

29.

In December 2024, a Department of Justice attorney involved in the negotiations with NRW conveyed that  BOEM and BSEE would not act on any of NRW's Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way until (1) submissions with respect to *all* of the assets NRW acquired in the bankruptcy sale are complete, including financial assurance; and (2) an agreement

is in place for payment of the bankrupt entities' royalty obligations with respect to the acquired assets. Neither BOEM nor BSEE had previously indicated that consideration of any individual Assignment of Record Title, Assignment of Operating Rights Interest, Designation of Operator form, or Assignment of Pipeline Right of Way was conditioned on complete submissions with respect to all of the other assets NRW acquired in the bankruptcy sale or on the existence of an agreement for payment of the bankrupt entities' royalty obligations.

30.

Defendants' failure to act on NRW's submissions has resulted in a threat of serious adverse consequences for NRW even beyond the delay damages it is already experiencing. On January 8, 2025, the liquidating trustee in the bankruptcy of MLCJR LLC and its affiliates filed an emergency motion seeking entry of an order authorizing the trustee to seek relinquishment of the Outer Continental Shelf leases and Right of Way Pipelines that NRW purchased in the bankruptcy sale and abandonment of the leases under 11 U.S.C. § 554. While the trustee casts blame on both NRW and Defendants, his argument focuses on the fact that the Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way contemplated by the purchase have not been approved and that the bankruptcy estate consequently still has legal title to the leases and Pipeline Rights of Way at issue and thus the estate still is exposed to the liabilities associated with those leases and Pipeline Rights of Way. If the Trustee's motion is granted, the leases and Pipeline Rights of Way could be terminated, in which case NRW would lose the interests it acquired in those assets.

**Agency Action Unlawfully Withheld or Unreasonably Delayed**

31.

The APA authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

32.

The type of failure to act contemplated by this provision of the APA is "properly understood as a failure to take . . . agency actions (including their equivalents) . . . defined in [5 U.S.C.] § 551(13)." *Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332, 336 (E.D. La. 2011) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004)). Title 5, § 551(13), in turn, defines "agency action" as including "the whole or part of an agency . . . license." "License" is defined as including "the whole or a part of an agency permit, certificate, ***approval***, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(9) (emphasis added). Therefore, an unreasonable agency delay in issuing or denying an approval or a complete failure to act on a request for approval is a final agency action made reviewable by the APA. *See Ensco Offshore*, 781 F. Supp. 2d at 336.

33.

Here, there have been substantial delays by BOEM and BSEE in acting upon NRW's submissions seeking approval of Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way that have crossed the line to complete failure to act. The unreasonableness of the delays by BOEM and BSEE are shown by the following factors, at a minimum:

(a)  First, the BOEM submissions at issue have been complete since, at the latest, June 10, 2024 and the submission to BSEE with respect to Pipeline Right of Way OCS-G 15003 SEG 9050 has been complete since no later than October 23, 2024. As exemplified in paragraphs 21-27, above, there is no question that at least the NRW submissions shown on Exhibit 1-A and the submission with respect to Pipeline Right of Way OCS-G 15003 SEG 9050 are complete and Defendants have acknowledged the same. A delay of more than six months from complete submission in approving routine Assignments of Record Title, Assignments of Operating Rights

Interest, and Designation of Operator forms like those at issue and a delay of nearly three months in approving the assignment of Pipeline Right of Way OCS-G 15003 SEG 9050 is unreasonable on its face.

(b) Further, the delays NRW has encountered in getting BOEM and BSEE to act on the submissions at issue here are substantially longer than what NRW representatives have encountered in connection with similar applications in the past. In the experience of NRW's representatives, Assignments of Record Title, Assignments of Operating Rights Interest, and Designation of Operator forms like those at issue here are typically approved (or rejected) by BOEM within 30 to 140 days after complete submission and Assignments of Pipeline Rights of Way like the one at issue here are typically approved (or rejected) by BSEE with 15 to 60 days after complete submission.

(c) Further still, the delays NRW has encountered here are inconsistent with the indications Congress provided in the OCSLA regarding the speed with which it expects the agencies to proceed. Congress did not expressly provide in the OCSLA that BOEM or BSEE must approve Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way, much less expressly provide for a timeframe within which the agencies must act on submissions seeking approval. However, the timeframes Congress did set out in the OCSLA are drastically shorter than the six months or more that have passed without BOEM or BSEE acting on the Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way at issue here. Congress provided in the OSCLA that Outer Continental Shelf leaseholders must submit exploration plans prior to commencing exploration and further provided that the Department of the Interior must act on such exploration plans within 30 days from submission. 43

U.S.C. § 1340(c)(1). Exploration plans are much more involved than the Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and the Assignment of Pipeline Rights of Way at issue here, and must be accompanied by extensive, detailed documentation. *See* 30 CFR §§ 550.211-228 (setting out what information and documentation an exploration plan must include). The 30-day timeframe Congress provided for the Department of the Interior to approve the exploration plans expressly required under the OCSLA shows that Congress could not have intended for the Department of the Interior and its bureaus to delay as much as six months or more without acting on routine submissions like the Assignments of Record Title, Assignments of Operating Rights Interest, and Designation of Operator forms at issue here.

(d) Finally, as noted above, a Department of Justice attorney involved in negotiating with NRW about payment of royalties alleged to be due from the bankrupt entities with respect to the assets NRW acquired in the bankruptcy sale has made statements that suggest that Defendants may be withholding action on the Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way at issue here until (1) NRW has made complete submissions, including financial assurance, with respect to ***all*** of the assets NRW acquired in the bankruptcy sale and/or (2) an agreement is in place for payment of the bankrupt entities' alleged royalty obligations with respect to the acquired assets. Nothing in the OCSLA, the regulations implementing the OCSLA, or the APA authorizes Defendants to withhold action on Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way that are fully submitted until separate submissions pertaining to separate Outer Continental Shelf assets are complete. The OCSLA, the regulations implementing the OCSLA, and the APA do not authorize

Defendants to withhold action on Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way until NRW agrees to pay a specific amount to cover separate, bankrupt entities' royalty obligations with respect to the assets NRW acquired in the bankruptcy sale, particularly when NRW has been unable to substantiate the amounts Defendants claim to be due from the bankrupt entities. To the extent Defendants have delayed acting on NRW's submissions seeking approval of the Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignments of Pipeline Rights of Way at issue for these reasons, Defendants have not only unlawfully withheld or unreasonably delayed action on NRW's requests, but have also acted in a manner that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Cf.* 5 U.S.C. § 706(A)(2) (setting out bases for holding unlawful and setting aside agency decisions).

**WHEREFORE**, Natural Resources Worldwide LLC respectfully prays that after due proceedings, the Court:

1. Compel Defendants to act without further unreasonable delay on NRW's pending completed submissions seeking approval the Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignment of Pipeline Right of Way at issue;

2. Permanently enjoin Defendants from continuing to delay action on the Assignments of Record Title, Assignments of Operating Rights Interest, Designation of Operator forms, and Assignment of Pipeline Right of Way at issue; and

3. Grant NRW such further relief as the Court deems proper in law and equity.

Respectfully submitted,

 */s/ Justin P. Lemaire*
Justin P. Lemaire, La. Bar No. 29948 (T.A.)
Edward B. Poitevent, II, La. Bar No. 10564
Gabriel G. Silva, La. Bar No. 38893
Katelyn N. McGibney, La. Bar No. 39979
Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana 70112
Telephone: (504) 581-3200
Facsimile: (504) 581-3361
Email: jlemaire@stonepigman.com
epoitevent@stonepigman.com
gsilva@stonepigman.com
kmcgibney@stonepigman.com

*Attorneys for Natural Resources Worldwide LLC*